IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

CAMRYN STANDIFER,

      **Plaintiff,**                                   Case No. 2:19–cv–3803
                                                       Judge Edmund A. Sargus, Jr.
      v.                                                       Magistrate Judge Chelsey M. Vascura

**CITY OF COLUMBUS, et al.,**

      **Defendants.**

## OPINION AND ORDER

This matter is before the Court on Defendants Brandon Harmon, Travis Turner, Holly Kanode and the City of Columbus's (collectively, "Defendants") Motion for Summary Judgment. (ECF No. 74.) The parties have fully briefed the motion and it is ripe for decision. (ECF No. 87.) For the following reasons, the Court **GRANTS in part and DENIES in part** Defendants' Motion for Summary Judgment.

### I.    STATEMENT OF FACTS

This case arises out of Plaintiff Camryn Standifer's arrest by several Columbus Division of Police officers on August 1, 2018. Defendant Officer Brandon Harmon personally arrested Mr. Standifer, Defendant Officer Travis Turner was present during the arrest, and Defendant Sergeant Holly Kanode was not present at the arrest but later approved Officer Harmon's use of force. (Harmon Dep. 161–62, ECF No. 72-2; Kanode Dep. 17, ECF No. 84-1; Harmon Body Worn Camera ("BWC"), ECF No. 75.)

On the day of Plaintiff's arrest, August 1, 2018, Officers Harmon and Turner responded to multiple complaints of suspicious persons and suspected narcotic trafficking at a Columbus residence. (Harmon Dep. 120, 128.) Upon arrival, they gathered identification from nine

1

individuals inside the residence, including the Mr. Standifer, who avers that he could not produce his license and instead gave the officers his social security number. (*Id.* 133; Standifer Dep. 116, ECF No. 72-1.) Officer Harmon ran the individuals' names through a warrant search and learned that Mr. Standifer had an outstanding warrant for failing to appear on a traffic violation matter for failure to maintain marked lanes. (Harmon Dep. 137–138.) The warrant reported that Plaintiff possessed "violent tendencies," which Officer Harmon avers means that an individual might have a criminal history of assault or a weapons offense. (*Id.* 138–139.)

Officer Harmon's body camera footage shows that, after he learned about the warrant, he asked Mr. Standifer what his first name is, then stated, "Go ahead and stand up for me. Put your arms behind your back." Officer Harmon then took hold of one of Mr. Standifer's wrists and moved it behind his back. At that point, Officer Harmon said, "don't tense up, don't tense up, relax, relax." The footage shows Mr. Standifer's arms bending at his elbows and moving up behind his back. Officer Harmon yelled "don't tense up" once more before throwing Mr. Standifer to the ground. (Harmon BWC.)

According to Mr. Standifer, he did not resist or tense his arms during the incident. He alleges that Officer Harmon pulled his arms "up his back" "forcing it further and further up." He avers that he did not have the chance to put his arms down before Officer Harmon raised him off the ground by his arms and threw him onto his head. (Standifer Dep. 124–29.)

Officer Harmon avers, however, that Mr. Standifer complied with commands to put his arms behind his back but was using "both of his hands to pull apart, to tense up and lock up." Officer Harmon told Mr. Standifer to "relax," but he was allegedly "actively trying to resist." To gain control, Officer Harmon "rais[ed] [Mr. Standifer's] arms up" to put him off balance and "tipp[ed] him forward over his legs" onto the ground. (Harmon Dep. 163–69.)

Mr. Standifer alleges that he suffered serious injuries because of Officer Harmon's takedown. His alleged injuries from the takedown stemmed from existing injuries caused by a serious car accident a few weeks prior. Mr. Standifer's existing leg wound allegedly reopened and started bleeding after the takedown. While lying on the ground in handcuffs, Mr. Standifer told the officers that he was unable to walk or roll onto his stomach. (Harmon BWC; Standifer Dep. 133–34.) Mr. Standifer was transported to the hospital and received a bandage for his leg. Afterwards, he was transported to the Franklin County jail. (Pl.'s Resp., Ex. B.) Three days later, he allegedly returned to the hospital complaining of pain in his left leg, left arm, and head. Mr. Standifer returned to the hospital twice over the next few days and was allegedly diagnosed with serious injuries to his leg and arm, and a methicillin-resistant staphylococcus aureus (MRSA) infection. He remained in the hospital undergoing treatment for almost a month. (Pl.'s Resp. 11.)

Mr. Standifer was charged with resisting arrest but the charge was dismissed in December 2018.

On July 31, 2019, Mr. Standifer filed suit against Officers Harmon, Turner, and Kanode, and the City of Columbus in the Franklin County Court of Common Pleas asserting the following claims: a Fourth Amendment excessive force claim against Officer Harmon; Fourth Amendment false imprisonment claims against Officers Harmon and Turner; Fourth Amendment malicious prosecution claims against Officers Harmon, Turner and Sergeant Kanode; a *Monell* claim against the City of Columbus. Plaintiff also asserted the following state law claims: assault and battery against Officer Harmon; wrongful imprisonment against Officers Harmon and Turner and the City of Columbus; malicious prosecution against Officers Harmon, Turner, Sergeant Kanode and the City of Columbus; intentional infliction of emotional distress against all Defendants. (*See* Compl., ECF No. 2; Third Am. Compl., ECF No. 47.)

Defendants removed the case to federal court on September 3, 2019, (Notice of Removal, ECF No. 1), and filed the instant motion for summary judgment on all claims on January 4, 2022 (ECF No. 74). In his Response in Opposition, Plaintiff voluntarily dismissed his Fourth Amendment false imprisonment claims, his state law wrongful imprisonment claims, all claims against Officer Turner, and the state law claims against the City of Columbus. (Pl.'s Resp. 16, 21.) The Court addresses the remaining claims below.

## II. STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court may therefore grant a motion for summary judgment if the nonmoving party who has the burden of proof at trial fails to make a showing sufficient to establish the existence of an element that is essential to that party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions" of the record which demonstrate "the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting Fed. R. Civ. P. 56(e)). "The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255 (citing *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 158–59 (1970)). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248; *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (The requirement that a dispute be "genuine" means that there must be more than "some metaphysical doubt as to the material facts.").

Consequently, the central issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Hamad v. Woodcrest Condo. Ass'n*, 328 F.3d 224, 234–35 (6th Cir. 2003) (quoting *Anderson*, 477 U.S. at 251–52).

## III. ANALYSIS
### A. Qualified Immunity

As to claims under 42 U.S.C. § 1983, qualified immunity shields government officials sued for performance of discretionary functions from civil liability unless "their actions violate clearly established rights of which a reasonable officer would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). At the summary judgment stage, a government official is "entitled to qualified immunity on summary judgment unless the facts, when viewed in the light most favorable to the plaintiff, would permit a reasonable juror to find that: (1) the defendant violated a constitutional right; and (2) the right was clearly established." *Bishop v. Hackel*, 636 F.3d 757, 765 (6th Cir. 2011). A right is clearly established if "[t]he contours of the right [are] sufficiently clear that a reasonable official would understand what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987); *see also Hope v. Pelzer*, 536 U.S. 730, 739 (2002) ("the unlawfulness must be apparent").

In determining whether a defendant is entitled to qualified immunity, "[t]he ultimate burden of proof is on [the plaintiff] to show that [the defendants] are not entitled to qualified immunity." *Wegener v. City of Covington*, 933 F.2d 390, 392 (6th Cir. 1999). A district court has discretion to decide whether there was a constitutional violation and a violation of clearly established law. *Id.*

**1. Fourth Amendment Excessive Force Claim Against Officer Harmon**

5

Defendants move for summary judgment on Plaintiff's Fourth Amendment excessive force claim under 42 U.S.C. § 1983. (Defs.' Mot. at 6.) Whether a use of force is reasonable turns on the objective reasonableness of the totality of the circumstances and should be "judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham v. Connor*, 490 U.S. 386, 395–98 (1989). Relevant are "(1) the severity of the crime at issue; (2) whether the suspect poses an immediate threat to the safety of the officers or others; and (3) whether the suspect is actively resisting arrest or attempting to evade arrest by flight." *Mitchell v. Schlabach*, 864 F.3d 416, 421 (6th Cir. 2017).

Defendants contend that Officer Harmon's use of force was reasonable because Plaintiff's outstanding warrant indicated that he had "violent tendencies" and Plaintiff allegedly resisted arrest by tensing his arms to prevent handcuffing. (Defs.' Mot. at 7–8.) Plaintiff contends that Officer Harmon's use of force was unreasonable because Mr. Standifer was compliant with all the commands and did not resist arrest. (Pl.'s Resp. at 12–13.)

When viewing the facts in a light most favorable to Plaintiff, there is a genuine issue of material fact as to whether Officer Harmon used objectively reasonable force in lifting Plaintiff up by his arms and taking him to the ground during the arrest. First, the crime at issue was not severe. "Conduct that is not a violent or serious crime does not permit an officer to use increased force absent other factors." *Vanderhoef v. Dixon*, 938 F.3d 271, 277 (6th Cir. 2019) (citing *Goodwin v. City of Painesville*, 781 F.3d 314, 322 (6th Cir. 2015)). Plaintiff's failure to appear for a traffic violation for failure to follow marked lanes was not a violent or serious crime. *Id.* (noting that the crime of reckless driving is not severe and is within the "lowest rung of unlawful activity").

Second, there was minimal evidence that Plaintiff posed a threat to Officer Harmon's safety or the safety of others. The body camera footage shows that Plaintiff complied with the officers'

6

directions to provide identification and stand up from the couch. There were also several other officers in the room providing support. Although the warrant stated that Plaintiff had "violent tendencies," Officer Harmon testified in his deposition that it simply meant the person could have a criminal history of assault or a weapons offense. Officer Harmon does not contend that he was aware of any violent criminal history. This factor weighs in Plaintiff's favor.

Third, there is a genuine issue of material fact as to whether Plaintiff resisted arrest. The body camera footage does not reveal whether Plaintiff's arm movements are voluntary or whether Officer Harmon lifted Plaintiff's arms behind his back. It is also not clear whether Plaintiff had an opportunity to comply with Officer Harmon's commands, either because Officer Harmon controlled Plaintiff's arms or did not wait to allow Plaintiff to comply before performing the takedown. The footage shows that Officer Harmon performed the takedown just moments after he initially told Plaintiff to put his arms behind his back.

An officer is not entitled to qualified immunity if there is a genuine issue of fact as to whether the officer gave verbal commands before using force or whether he gave the arrestee an opportunity to comply with commands. *See Richards v. Cnty. of Washtenaw*, 818 F. App'x 487, 492 (6th Cir. 2020) (denying qualified immunity where a plaintiff could not comply with commands when he was pinned to the ground, and there was an issue of fact as to whether the officers told the plaintiff to "stop resisting" before taking him to the ground); *Harris v. City of Circleville*, 583 F.3d 356, 366 (6th Cir. 2009) (denying qualified immunity when, in a nonthreatening situation, officers immediately took a man to the ground prior to issuing any verbal commands). It is a proper question for a jury whether Plaintiff resisted arrest and consequently whether Officer's use of force was objectively reasonable. Officer Harmon is not entitled to qualified immunity from Plaintiff's excessive force claim.

7

### 2. Fourth Amendment Malicious Prosecution Claims Against Officer Harmon and Sergeant Kanode

Plaintiff asserts claims against Officer Harmon and Sergeant Kanode for malicious prosecution, arguing that they filed a criminal charge against him for resisting arrest even though he did not resist. (Pl.'s Mot. at 16.) Defendant moves for summary judgment on these claims.

To establish a malicious-prosecution claim pursuant to § 1983, a plaintiff must demonstrate that: "(1) the defendant made, influenced, or participated in the decision to prosecute the plaintiff; (2) there was no probable cause for the criminal prosecution; (3) as a consequence of the legal proceedings, the plaintiff suffered a deprivation of liberty apart from the initial arrest; and (4) the criminal proceeding was resolved in the plaintiff's favor." *Webb v. United States*, 789 F.3d 647, 659 (6th Cir. 2015). "To be liable for participating in the decision to prosecute, the officer must participate in a way that aids in the decision, as opposed to passively or neutrally participating." *Id.* at 660.

Defendants are entitled to summary judgment on Plaintiff's malicious prosecution claim because there is insufficient evidence that Officer Harmon made, influenced, or participated in the decision to prosecute Plaintiff in more than a passive or neutral way. Officer Harmon was involved in Mr. Standifer's case only until the end of the arrest process. (Harmon Dep. 179–80.) He filed an arrest report and transported Plaintiff to jail. The Sixth Circuit has held that "[m]erely filing an allegedly misleading case report, without more active participation, qualifies only as 'passive or neutral' participation and is thus an insufficient basis for a malicious-prosecution claim." *Washtenaw*, 818 F. App'x at 493; *see also Miller v. Davis*, 653 F. App'x 448, 455–56 (6th Cir. 2016) (holding that a detective's report to prosecutors, even if "fundamental to the commencement

of the criminal proceedings" was by-itself insufficient for a malicious-prosecution claim); *Kinkus v. Vill. of Yorkville*, 289 F. App'x 86, 91 (6th Cir. 2008) (holding that an officer's actions of only filing a police report, signing a blank criminal complaint, and soliciting a written report from another officer were insufficient).

Plaintiff voluntarily dismissed his Fourth Amendment malicious prosecution claim against Officer Turner in his Response. (Pl.'s Resp. at 16.) He did not explicitly dismiss his malicious prosecution claim against Sergeant Kanode but also does not make any reference or argument supporting the claim against her in his Response in Opposition.

Even if Plaintiff did support his malicious prosecution claim against Sergeant Kanode, it would fail for the same reasons. The fact that Sergeant Kanode completed a use of force review does not, by itself, show that she made, influenced, or participated in the prosecutor's decision to charge Plaintiff with resisting arrest. Defendants are entitled to summary judgment on Plaintiff's Fourth Amendment malicious prosecution claims against Officer Harmon and Sergeant Kanode.

### B. *Monell* Claim Against City of Columbus

Plaintiff claims that the City is liable under 28 U.S.C. §1983 because (1) it has a policy of rubber-stamping excessive force incidents as reasonable, and (2) the City was deliberately indifferent to the danger Officer Harmon posed to the public because it ignored Officer Harmon's propensity for unnecessary violence. (Pl.'s Mot. at 17.)

It is well established that a municipality may be held liable under § 1983 for customs or policies that violate constitutional rights. *Monell v. Dept. of Social Serv.*, 436 U.S. 658, 690–91, 94 (1978). A municipality's customs or policies can take the form of (1) official policy or legislative enactment, (2) decisions or ratifications of final decision makers, (3) inadequate training or supervision, or (4) a custom of acquiescence to or tolerance of rights deprivations. *Jackson v.*

9

*City of Cleveland*, 925 F.3d 793, 828 (6th Cir. 2019). To bring a proper *Monell* claim, Mr. Standifer must establish the existence of a municipal custom or policy, a constitutional violation, and a causal link between the two. *City of Canton v. Harris*, 489 U.S. 378, 385 (1989).

1. **Sergeant Kanode's Ratification of Officer Harmon's Use of Force**

As stated above, a municipality's policy can come in the form of a final decision-maker's ratification of a subordinate's decision. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480–81, 85 (1986). Even if it is shown that a municipality subsequently ratified a decision, a plaintiff must still "prove that the ratification was a 'moving force' in causing the constitutional violation." *Feliciano v. City of Cleveland*, 988 F.2d 649, 656 n.3 (6th Cir. 1993) (quoting *Williams v. Ellington*, 936 F.2d 881, 885 (6th Cir. 1991)). In other words, the ratification must have a constraining effect so that the subordinate's only option—outside disobedience—is to carry out the unlawful act. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988) (plurality).

Plaintiff claims the City of Columbus has a policy of rubber-stamping officers' use of excessive force, and that it is evident by Sergeant Kanode's ratification of Officer Harmon's use of force against him. Sergeant Kanode ratified Officer Harmon's use of force against Mr. Standifer in her report after reviewing the body camera footage and speaking to the officers who were present. (Pl.'s Resp. at 17; Kanode Dep., Ex. C.) Plaintiff's expert, Andrew Scott, found it "troublesome" that Sergeant Kanode concluded that the body camera footage did not show excessive force. He alleges that Sergeant Kanode copied and pasted Officer Harmon's statement into her review including the mistakes within, and that she had never referred a Columbus Police Officer to the department's Employee Action Review System. (Kanode Dep. at 72, Ex. C; Pl.'s Resp. Ex. A, B.)

Viewing the evidence in a light most favorable to Plaintiff, there is insufficient evidence that Sergeant Kanode's ratification was a "moving force" behind Officer Harmon's alleged constitutional violation. In *England v. City of Columbus*, this Court found that a supervisor's ratification might have been a "moving force" in the Plaintiff's constitutional violation where there was evidence that the supervisors incorrectly believed officers could use deadly force when they subjectively—but unreasonably—feared for their lives. *England v. City of Columbus*, Case No. 2:19-cv-1048, 2021 U.S. Dist. LEXIS 242518, at *35 (S.D. Ohio Dec. 20, 2021). This was an unconstitutional standard. But the defendant officer, relying on the supervisors' beliefs, testified with "'absolute' confidence that his actions would ultimately be found within policy." *Id.*

There are no such facts here. The record does not suggest that supervisors wrongly ratified excessive uses of force or that Officer Harmon believed his actions would be ratified. In other words, the evidence presented does not show that Sergeant Kanode's ratification was a "moving force" in Officer Harmon's actions or that he felt he would be disobedient by not performing the takedown. *See Praprotnik*, 485 U.S. at 127. Even if Sergeant Kanode has never referred an officer to the Employee Action Review System, this does not suggest that she has incorrectly ratified officers' use of excessive force.

2. **Deliberate Indifference to Officer Harmon's Propensity for Violence**

Plaintiff's deliberate indifference claim also lacks support. In *Monell* claims involving the police, a municipality is liable for "deliberate indifference" if the need for training that was so obvious, and the inadequacy was likely to result in a violation of constitutional rights, that the municipality can be said to have been deliberately indifferent to the rights of persons with whom the police come into contact. *Barber v. City of Salem*, 953 F.2d 232, 236 (6th Cir. 1992); *Harris*, 489 U.S. at 388–89. A plaintiff can establish deliberate indifference by showing that either the

City "fail[ed] to act in response to repeated complaints of constitutional violations by its officers." *Ellis*, 455 U.S. at 700–01 (quoting *Brown v. Shaner*, 172 F.3d 927, 931 (6th Cir. 1999)).

Plaintiff contends that the City was deliberately indifferent to the danger Officer Harmon posed to the public because the City knew or should have known of Officer Harmon's propensity for violence. (Pl.'s Resp. at 19.) Plaintiff's expert, Andrew Scott, opines that the City's failure to address and monitor Officer Harmon despite 43 complaints against him over 13 years shows the City consciously disregarded his aggressive tendencies. (Pl.'s Mot. at 18, Ex. C.) Plaintiff notes that 28 of the complaints occurred when Officer Harmon was arresting an individual, and 62% of the complaints reported an allegedly injury sustained because of Officer Harmon's actions. (Pl.'s Mot. at 18, Ex. C.)

Defendants argue that Columbus Police officers receive extensive training with respect to all facets of policing, including the use of force. (Harmon Dep. at 30–31, 218–226.) Officer Harmon, in particular, allegedly has significant training on use of force and arrest procedures. (Harmon Dep. at 218–26.)

To establish deliberate indifference through the number of complaints against Officer Harmon, Plaintiff must show some evidence of the normal number of complaints a Columbus police officer receives. In *Thomas v. City of Chattanooga*, 398 F.3d 426, 430 (6th Cir. 2005), the plaintiff introduced evidence of forty-five suits of excessive force against the Chattanooga Police Department to establish that the department had a custom of condoning excessive force by its officers. The Sixth Circuit held that such evidence was "conclusory" because the plaintiff "did not produce any data showing what a 'normal' number of excessive force complaints would be." *Id.* at 431; *see also Ellis v. Cleveland Mun. Sch. Dist.*, 455 F.3d 690, 701 (6th Cir. 2006) (upholding

12

requirement that a plaintiff must show evidence of a "normal" number of complaints to suggest the defendant was deliberately indifferent to the number of complaints).

Likewise, the conclusory allegations that 43 complaints over 13 years is "excessive" for a police officer are insufficient to suggest the City of Columbus has an policy of ignoring complaints so that it is deliberately indifferent to the rights of citizens. *See Harris*, 489 U.S. at 388–89. There no evidence presented of what a normal number of complaints is for an officer in Officer Harmon's position. Additionally, "the plaintiff bears a heavy burden in proving municipal liability, and he cannot rely solely on a single instance" or on one officer's conduct "to infer a policy of deliberate indifference." *Doe v. Claiborne County*, 103 F.3d 495 (6th Cir. 1996). Defendants are entitled to summary judgment on Plaintiff's *Monell* claims.

### C. State-Law Claims

Plaintiff asserts state-law claims against Officer Harmon for assault, battery, malicious prosecution and intentional infliction of emotional distress. He also asserts malicious prosecution and intentional infliction of emotional distress claims against Sergeant Kanode. (Third Am. Compl. ¶¶ 34–77.)

Defendants move for summary judgment on Plaintiff's state law claims arguing that they qualify for state statutory immunity. Under Ohio law, employees of political subdivisions, including police officers, are statutorily immune from tort liability unless:

(a) their acts or omissions were manifestly outside the scope of their employment or official responsibilities;

(b) their acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner; or

(c) civil liability is expressly imposed upon them by some other section of the Ohio Revised Code.

R.C. § 2744.03(A)(6).

The statute creates a presumption of immunity, and Plaintiff must provide sufficient evidence to rebut it with one of the three statutory immunity exceptions. *See Cook v. Cincinnati*, 103 Ohio App. 3d 80, 90 (Ohio App. 1st Dist., 1995). Because the Officer Harmon and Sergeant Kanode's conduct was within the scope of their employment and because civil liability is not expressly imposed by another section of the Ohio Revised Code, Plaintiff must show that they acted "with malicious purpose, in bad faith, or in a wanton or reckless manner." *Id.* § 2744.03(A)(6)(b).

Officer Harmon is not entitled to state statutory immunity at summary judgment because his state immunity defense "stands or falls with [his] federal qualified immunity defense." *Hopper v. Plummer*, 887 F.3d 744, 760 (6th Cir. 2018). That is, whether Officer Harmon acted objectively reasonable is based on the same disputed facts that determine whether he acted with "with malicious purpose, in bad faith, or in a wanton or reckless manner." *Chappell v. City of Cleveland*, 585 F.3d 901, n.3 (6th Cir. 2009); *Martin v. City of Broadview Heights*, 712 F.3d 951, 963 (6th Cir. 2013) ("As resolution of the state-law immunity issue is heavily dependent on the same disputed material facts as the excessive force determination under § 1983, the district court properly denied summary judgment to the officers on the estate's state-law claims"). Because there is a genuine issue of material fact as to whether Officer Harmon acted with malicious purpose, he is not entitled to state statutory immunity.

Sergeant Kanode, however, has no surviving constitutional claims against her for which she argues qualified immunity. She is shielded by state statutory immunity because there are insufficient facts that she acted "with malicious purpose, in bad faith, or in a wanton or reckless manner" R.C. § 2744.03(A)(6)(b). Malicious purpose is defined as the "willful and intentional design to do injury . . ." *Anderson v. Massillon*, 134 Ohio St.3d 380, 2012-Ohio-5711, 983 N.E.2d

14

266. Bad faith denotes a "dishonest purpose" or "conscious wrongdoing." *Id.* Wanton misconduct is "the failure to exercise any care towards those to whom a duty of care is owed in circumstances in which there is a great probability that harm will result." *Id.* Finally, reckless conduct is the "conscious disregard or indifference to a known or obvious risk of harm to another…" *Id.*

Plaintiff asserts that Sergeant Kanode knew "full well that Mr. Standifer did not resist in any way, [and] approved Officer Harmon's use of force in yet another example of the systemic rubber stamping that gives rise to significant and traumatic injury to the public." This conclusory assertion is insufficient, without more, to suggest malicious purpose, bad faith, wantonness or recklessness.

## IV. CONCLUSION

For the foregoing reasons, the Court the Court **GRANTS in part and DENIES in part** Defendants' Motion for Summary Judgment (ECF No. 74). Specifically, the Court **GRANTS** summary judgment on Plaintiff's §1983 malicious prosecution claims, *Monell* claims against the City of Columbus, and all state-law claims against Sergeant Kanode. The Court **DENIES** summary judgment on Plaintiff's §1983 excessive force claim against Officer Harmon and Plaintiff's state law claims against Officer Harmon. Officer Harmon is the only remaining defendant. This case remains open.

**IT IS SO ORDERED**.

**1/31/2022**                                                       **s/Edmund A. Sargus, Jr.**
**DATE**                                                               **EDMUND A. SARGUS, JR.**
                                                                     **UNITED STATES DISTRICT JUDGE**